**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

TYQUAN JOHNSON,

                                      Plaintiff,

      v.

BRYAN MASON,[1] et al.,                    No. 9:22-CV-00590
                                           (MAD/CFH)

                                      Defendants.


━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━


**APPEARANCES:**                          **OF COUNSEL:**

TYQUAN JOHNSON
17-B-1104
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff pro se

Attorney General for the                  RACHEL OUIMET, ESQ.
State of New York                         Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

    Plaintiff pro se Tyquan Johnson ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York State Department of Corrections and Community

---

[1] The Court terminated the lead defendant following section 1915 review of plaintiff's complaint.  See Dkt. No. 4 at 7-8.  Accordingly, the Clerk is respectfully directed to amend the caption to reflect Bryan Mason, the next named still-remaining defendant, as the lead defendant.
[2]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Lieutenant Bryan Mason, Sergeant Jacob Jarvis, Correctional Officer ("C.O.") Kenneth Varin, C.O. Robert Lamoy, C.O. Seth Bombard, and C.O. Robert Stiles (collectively "defendants") violated his constitutional rights under the First and Eighth Amendments. See Dkt. No. 12 ("Am. Compl."). Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and in the alternative, a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Dkt. No. 26-1. Plaintiff opposed the motion and filed a cross-motion for summary judgment. See Dkt. No. 29. Defendants opposed the cross-motion and replied to their motion for summary judgment. See Dkt. No. 30. For the following reasons, it is recommended that both defendants' motion and plaintiff's cross-motion be denied.

## I. Background

On review of defendants' motion, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought."); see also DeMasi v. Benefico, 567 F. Supp. 2d 449, 452-53 (S.D.N.Y. 2008) ("On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff."). On

review of plaintiff's cross-motion, the facts will be related in the light most favorable to defendants.  See infra Section IV.

### A. Plaintiff's Facts

Plaintiff alleges that, on August 7, 2021, while housed in the special housing unit ("SHU")[3] at Clinton Correctional Facility ("Clinton C.F."), he "requested . . . medical attention for chest pain [and difficulty] breathing."  Am. Compl. at 4, ¶1, ¶9 (noting he was housed in "SHU 23 Cell M-442 and CS-442").  Defendants and a nonparty nurse subsequently arrived at plaintiff's cell and "told [him] to stick both of [his] hands" through a "flap" to be handcuffed and escorted to the hospital.  Id. at 4, ¶2.  Plaintiff informed defendants that he injured his left arm, "made a[n] arm support holder to help with the pain[,]" and could not place both of his hands through the flap.  Id. at 4, ¶3.  Defendant Mason told plaintiff that "if [he did] not put both [of his] hands [through the flap,] they w[ould] com[e] in[to his cell] to get [him.]"  Id. at 4, ¶4.  Plaintiff advised defendants that he would "try [his] best to stick [his] hands through [the flap,]" but wished to instead exit his cell in "waist chains and [one] handcuff[.]"  Id. at 4, ¶¶5, 7.  In response, defendants told plaintiff that he was refusing a direct order.  See id. at 4, ¶8.

Defendants "approached" plaintiff's cell, with at least one individual carrying a recording device.  Am. Compl. at 4-5, ¶¶9-10.  Plaintiff reiterated that "[he was] injured, and [ ] not refusing to [exit his cell, [but instead unable to] move [his] left arm[.]"  Id. at 5, ¶10.  Plaintiff also told defendants that he needed medical attention due to difficulty

---

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single- or double-occupancy cells grouped so as to provide separation from the general population[.]"  N.Y. COMP. CODES R. & REGS. tit. 7 ("7 N.Y.C.R.R."), § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reason, or in other circumstances as required.  See id. § 301.

breathing.  See id.  Plaintiff "layed [sic] down face first on the ground of [his] cell and [defendants] sprayed several burst[s] of there [sic] extraction can spray" at him.  Id. at 5, ¶11.  Plaintiff asked defendants to stop dispensing the spray because he could not breathe, and placed his mouth against the "door flap" to catch his breath.  Id. at 5, ¶12.

Plaintiff then attempted to place his hands through the flap while reiterating his inability to move his left arm.  See Am. Compl. at 5, ¶13.  Defendants "pulled" on plaintiff's hands, cuffed his wrists, and opened his cell door.  Id.  Defendants then entered plaintiff's cell, forced him to the floor, and punched and kicked him for "several" minutes, and "pull[ed] out [his] dreadlocks[.]"  Id. at 5, ¶14.  Defendants "dragged" plaintiff out of his cell by his feet and hands, and brought him to a facility van, where they "beat[ him] more" and "pull[ed] out" his hair.  Id. at 5, ¶15.  The van then transported plaintiff to a facility hospital.  See id. at 5, ¶16.

Plaintiff "was never written a misbehavior report for this incident[.]"  Am. Compl. at 6, ¶19.  He was transferred to Great Meadow Correctional Facility ("Great Meadow C.F.") on August 27, 2021.  See Dkt. No. 26-5 at 4, ¶12.

Plaintiff contends that he "exhaust[ed his] administrative remedies" because he "wrote to the Commissioner of Albany" and "to Superintendent D. McIntosh[.]"  Am. Compl. at 5-6, ¶18.  Plaintiff also "wrote [a] statement while at [an] interview with Supervisior [sic] Sgt. Owens at Clinton [C.F.]"  Id.  Plaintiff additionally asserts that, prior to this incident, he wrote to the DOCCS "Director of Special Housing" "regarding threats from C.O. staff[.]"  Id.

**B. Procedural History**

Plaintiff commenced this action on May 31, 2022, alleging that defendants violated his constitutional rights under the Eighth Amendment when they used excessive force and failed to intervene during the August 7, 2021, incident.  See Am. Compl. at 7; see also Dkt. No. 4 at 12-13.  Plaintiff also asserts that defendants violated the Free Exercise Clause of the First Amendment.  See Am. Compl. at 7; see also Dkt. No. 4 at 10-12.  On March 20, 2023, in lieu of an answer, defendants filed this motion for summary judgment, or, in the alternative, for partial dismissal of plaintiff's Eighth Amendment failure to intervene claim.  See Dkt. No. 26-1.  On April 6, 2023, plaintiff filed a cross-motion for summary judgment, restating the allegations set forth in his complaint.  See Dkt. No. 29.  Defendants replied on May 1, 2023.  See Dkt. No. 30.

## II. Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to summary judgment because plaintiff "failed to exhaust his administrative remedies before commencing this action[.]"  Dkt. No. 26-1 at 8.  Plaintiff maintains that he exhausted his administrative remedies.  See Am. Compl. at 5-6; see also Dkt. No. 29 at 6-7.

### A. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials." FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest

> arguments that they "suggest[.]"  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration.  See 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  See id. at 524.  "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated."  Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

"Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" <u>Key v. Toussaint</u>, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing . . . that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. <u>Hubbs v. Suffolk Cnty. Sheriff's Dep't</u>, 788 F.3d 54, 59 (2d Cir. 2015) (citing <u>Mojias v. Johnson</u>, 351 F.3d 606, 610 (2d Cir. 2003), and <u>Snider v. Melindez</u>, 199 F.3d 108, 114 (2d Cir. 1999)). "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." <u>Coleman v. Nolan</u>, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing <u>Smith v. Kelly</u>, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).[4]

Here, there is no genuine dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. <u>See</u> 7 N.Y.C.R.R. § 701.5. First, the inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the alleged incident. <u>See id.</u> § 701.5(a). Second, the inmate may appeal IGRC's decision to the facility's Superintendent. <u>See id.</u> § 701.5(c)(1). Third, the inmate may appeal the Superintendent's decision to the Central Office Review committee ("CORC"). <u>See id.</u> § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the

---

[4] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021) (citing 7 N.Y.C.R.R. § 701.8), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

### 1. Whether Plaintiff Exhausted His Administrative Remedies

Defendants argue that this action should be dismissed because "[p]laintiff failed to exhaust administrative remedies available to him[.]" Dkt. No. 26-1 at 11. Defendants contend "that [p]laintiff was familiar with the grievance process, and . . . it was always available to him." Id. at 12. Defendants assert that, despite being aware of the grievance process, and "[d]espite the availability of a fully functioning [Incarcerated Grievance Program ("IGP")] at each of the facilities where [p]laintiff was housed, [p]laintiff failed to file any grievance or extension request related to the alleged August 7, 2021 incident." Id.[5]

Defendants have submitted sworn declarations from Christine Gregory, the IGP Supervisor at Clinton C.F.; Alexandra Cutler, the IGP Supervisor at Great Meadow C.F.; and Rachel Seguin, the Director of the IGP for DOCCS. See Dkt. Nos. 26-3, 26-4, 26-5. In their declarations, both Gregory and Cutler note that plaintiff completed a shop facility orientation at each facility. See Dkt. No. 26-3 at 2, ¶¶5-6 (the shop facility orientation at Clinton C.F. teaches incarcerated individuals "how to file and appeal grievance

---

[5] As discussed supra, plaintiff was housed at Clinton C.F. during the August 7, 2021, incident, but was transferred to Great Meadow C.F. on August 27, 2021. See supra Subsection I.A. As the deadline for filing a grievance regarding this incident was August 28, 2021, and the deadline for requesting an extension of time was September 21, 2021, the IGP at both Clinton C.F. and Great Meadow C.F. are relevant to plaintiff's claim. See Dkt. No. 26-4 at 4-5, ¶¶21-22; see also Williams v. Correction Officer Priatno, 829 F.3d 118, 120 (2d Cir. 2016) ("If an inmate wishes to file a new grievance about an incident that occurred prior to a transfer, he must file the grievance in the facility where he is currently housed, 'even if it pertains to another facility.'") (quoting 7 N.Y.C.R.R. § 701.5(a)(1)).

complaints"); <u>see also</u> Dkt. No. 26-4 at 2, ¶¶5-6 (same, but at Great Meadow C.F.). Gregory and Cutler also state that plaintiff had full access to the IGP at each facility, but based on their review of the available records, he never filed a grievance with respect to the August 7, 2021, alleged incident.  <u>See</u> Dkt. No. 26-3 at 4, ¶¶18-19; <u>see also</u> Dkt. No. 26-4 at 4-5, ¶¶21-22.  Moreover, Seguin declares that, pursuant to her review of the relevant DOCCS records, "[p]laintiff has not appealed any grievances to CORC pertaining to the allegations of First and Eighth Amendment violations against [d]efendants stemming from an August 7, 2021 incident at Clinton C.F."[6]  Dkt. No. 26-5 at 4-5, ¶¶13-14.

Plaintiff alleges that he fully exhausted his remedies because he "wrote to the Commissioner of Albany[,] . . . and wrote [a] statement while at [an] interview with Supervisior [sic] Sgt. Owens at Clinton [C.F.]"  Am. Compl. at 5-6, ¶18.  However, "[t]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."  <u>Timmons v. Schriro</u>, No. 14-CV-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) (citing <u>Macias v. Zenk</u>, 495 F.3d 37, 44 (2d Cir. 2007)) (additional citations omitted).  Similarly, assuming as true that plaintiff wrote to the Commissioner and Sgt. Owens, "a plaintiff's letters to prison [officials] or other officials outside of the grievance chain of command are insufficient to properly exhaust administrative remedies."  <u>Louis-Charles v. Baker</u>, No. 9:16-CV-1417 (MAD/CFH), 2018 WL 5728054, at *5 (N.D.N.Y. July 30, 2018) (citing <u>Geer v. Chapman</u>, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), <u>report and recommendation adopted</u>, 2016 WL 6090874

---

[6] A copy of the computer print-out listing this information is attached to Seguin's declaration.  <u>See id.</u> at 7-8.  The records show that plaintiff has filed no grievance appeals to the CORC.  <u>See id.</u>

(N.D.N.Y. Oct. 18, 2016), and Macias, 495 F.3d at 44-45), report and recommendation adopted sub nom. Louis-Charles v. Barker, 2018 WL 4299982 (N.D.N.Y. Sept. 10, 2018). Thus, these informal actions do not constitute proper exhaustion.

Plaintiff further claims that he fully exhausted his administrative remedies because he wrote a "hand written [sic] letter" to Superintendent D. McIntosh, which "she herself acknowledge[d] receiving on 8-08-21 [and] referred the letter to DSS Bishop [on] 8-09-21." Dkt. No. 29 at 6. However, to satisfy the PLRA's exhaustion requirement, "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including [the] CORC[.]" Murray v. Palmer, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010); see also 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."). Accepting as true, for purposes of this motion, that plaintiff timely[7] filed a complaint with the Superintendent regarding his claims set forth in this action, he still failed to file an appeal of this grievance with the CORC when the Superintendent failed to respond. See Am. Compl. at 6; see also Dkt. No. 29 at 6. Without filing an appeal, plaintiff has not satisfied the PLRA's exhaustion requirements. See Woodford v. Ngo, 548 U.S. 81, 93 (2006); see also Lopez v. Whitmore, No. 9:13-CV-952 (BKS/ATB), 2015 WL 4394604, at *6 (N.D.N.Y. July 16, 2015) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA.") (citation omitted).

---

[7] Plaintiff claims that the Superintendent "acknowledge[d] receiving [his complaint] on 8-08-21." Dkt. No. 29 at 6. Plaintiff's deadline to file his grievance was August 28, 2021; therefore, his complaint was timely. See, e.g., Dkt. No. 26-4 at 4-5, ¶¶21-22.

Thus, defendants have met their burden of demonstrating that a grievance procedure existed, and that plaintiff failed to exhaust administrative remedies related to the August 7, 2021, incident.  As a result, the undersigned must assess whether administrative remedies were available to plaintiff.

### 2. Availability

"[T]he PLRA requires 'proper exhaustion,' which '"means using all steps that the agency holds out, and doing so properly[.]'"  Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 90, and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies[.]"  Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets omitted).  "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  Id.  Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  Id.  (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief."  Ross, 578 U.S. at 643.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.  (citing Booth, 532 U.S. at 736).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Liberally construing plaintiff's complaint, he appears to allege that the grievance process was not available to him given that: (1) "prior to this incident," he "wrote to the [DOCCS] Director of Special Housing . . . regarding threats from C.O. staff"; and (2) he submitted a handwritten letter to Superintendent D. McIntosh, of which defendants claim they have no record. Am Compl. at 6; see Dkt. No. 29 at 6; see also Dkt. No. 26-1 at 11-12.

### a. Plaintiff's Letter to the Director of Special Housing

Plaintiff alleges that he "wrote to the [DOCCS] Director of Special Housing . . . prior to [the August 7, 2021,] incident regarding threats from C.O. staff." Am. Compl. at 5-6. Plaintiff claims that this letter "more specifically provides that only those administrative remedies that are available must first be exhausted[;] thus[,] it [is] critical that this [letter] be fairly and accurately presented[.]" Dkt. No. 29 at 6. Reading plaintiff's submissions with due solicitude, the undersigned considers plaintiff's assertions to mean that the grievance process was unavailable to him because the C.O. staff "thwart[ed him] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. 643-44; see Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d. Cir. 2015) (noting that administrative remedies can be considered "unavailable" if the plaintiff can show that he received threats from correction officers preventing him from appealing his grievance).

To successfully allege unavailability, "[a]n inmate must point to some affirmative action by a prison official that prevented the inmate from availing himself of the

13

grievance procedures."  Martinaj v. Uhler, No. 9:18-CV-257 (BKS/DJS), 2021 WL 3793769, at *7 (N.D.N.Y. Aug. 26, 2021) (citing Grafton v. Hesse, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order), and Ruggiero, 467 F.3d at 178).  This Circuit has "held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action."  Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011) (citing Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004), and Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004)); see also Cicio v. Alvarez, No. 19-CV-9883 (CS), 2022 WL 1003796, at *4 (S.D.N.Y. Apr. 4, 2022) ("Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable.") (citation and quotation marks omitted).

In Hunter v. Rouse, the inmate plaintiff alleged "that he did not file a grievance because he feared retaliation from [the d]efendants," who he alleged assaulted him. Hunter v. Rouse, No. 9:20-CV-65 (LEK/DJS), 2020 WL 8474744, at *3 (N.D.N.Y. Sept. 17, 2020), report and recommendation adopted, 2021 WL 101083 (N.D.N.Y. Jan. 12, 2021).  Specifically, the "[p]laintiff allege[d that one of the defendants] told him that if he told 'anyone what happened, the next time [the plaintiff] won't walk away.'"  Id. at *4. This Court determined that the plaintiff's allegations were "more than a generalized fear of retaliation" and, therefore, "sufficiently reasonable to render administrative remedies unavailable."  Id.; see also Galberth v. Durkin, No. 9:14-CV-0115 (BKS/ATB), 2014 WL 7409915, at *8 (N.D.N.Y. Dec. 31, 2014) (holding that the defendants' threats that the plaintiff "would be beaten within an inch of his life" if he told anyone about the alleged assault was more than a generalized fear of retaliation and excused the plaintiff's failure to exhaust).

By contrast, "[c]onclusory allegations of intimidation are insufficient to establish the unavailability of administrative remedies[.]"  Medina v. Kaplan, No. 16-CV-7223 (KMK), 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) (citing Khudan v. Lee, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016)); see Lucente v. Cnty. of Suffolk, 980 F.3d 284, 312-13 (2d Cir. 2020).  "Accusations which are 'unsupported' and 'stand alone' are similarly insufficient."  Medina, 2018 WL 797330, at *5.  Where an inmate plaintiff claimed that "no grievance was filed was due to the fact that [he] felt that there would be retaliation against [him] if [he] did file such documents," this Court concluded that the plaintiff "fail[ed] to allege how any individual prevented him from filing a grievance" and merely stated "a generalized fear of retaliation"; therefore, the Court granted the defendants' motion for summary judgment.  Rodriguez v. Landry, No. 9:20-CV-556 (BKS/TWD), 2020 WL 6747806, at *5-6 (N.D.N.Y. Oct. 26, 2020), report and recommendation adopted, 2020 WL 6743077 (N.D.N.Y. Nov. 17, 2020).  Similarly, the Second Circuit found that a plaintiff, who claimed unavailability due to staff intimidation, "had filed grievances subsequent to the staff members' threats[; thus the plaintiff] was never actually prevented from filing a grievance."  Grafton v. Hesse, 783 F. App'x at 31. The Second Circuit upheld the district court's determination that the staff members' intimidation did not render the prison grievance system unavailable to the plaintiff.  See id.

Here, plaintiff has failed to allege any facts beyond his vague allegation that he received "threats from C.O. staff" "prior to this incident" to support a finding that remedies were unavailable to him due to "machination, misrepresentation, or intimidation."  Am. Compl. at 6; Ross, 578 U.S. at 644; see also Magassouba v. Cross,

No. 08-CV-4560 (RJH/HBP), 2010 WL 1047662, at *10 (S.D.N.Y. Mar. 1, 2010) ("An inmate's perception, based on past experience, that the grievance process will be unsuccessful, does not relieve an inmate of the exhaustion requirement.") (collecting cases), report and recommendation adopted, 2010 WL 4908670 (S.D.N.Y. Nov. 30, 2010); Edwards v. DeStafano, No. 13-CV-4345 (JS/JMW), 2023 WL 6594013, at *7 (E.D.N.Y. July 14, 2023) ("[The p]laintiff's conclusory arguments . . . are insufficient evidence of an actual error, manipulation, conspiracy or scheme that caused [the p]lainitff's grievances to not being filed."), report and recommendation adopted sub nom. Edwards v. DeStefano, 2023 WL 6307341 (E.D.N.Y. Sept. 28, 2023).  Thus, he has not demonstrated unavailability through this earlier letter he sent to the Director of Special Housing "regarding threats from C.O. staff."  Am. Compl. at 5-6.  Further, as discussed infra, plaintiff claims that he submitted a grievance to the Superintendent subsequent to the C.O. staff's threats, which shows he was not actually prevented from filing a grievance.  See infra Subsection II.B.2.b; see also Am. Compl. at 6; Black v. Fischer, No. 12-CV-2341 (CM), 2013 WL 1314940, at *8-9 (S.D.N.Y. Mar. 28, 2013) (noting that the plaintiff's claim that he was deterred from pursuing grievances due to threats from a defendant was overcome by the fact that the plaintiff filed other grievances and complaints during the relevant time period).  Therefore, plaintiff has not established that the threats he previously received from unspecified C.O. staff rendered the prison grievance system unavailable to him.

### b. Plaintiff's Letter to the Superintendent

Plaintiff claims that he submitted a handwritten letter to Superintendent D. McIntosh,[8] which "she herself acknowledge[d] receiving on 8-08-21 [and] referred the letter to DSS Bishop [on] 8-09-21." Dkt. No. 29 at 6. Defendants do not address plaintiff's allegation that Superintendent McIntosh acknowledged receiving his letter, but instead assert that, according to IGP and CORC records, "plaintiff never filed a grievance concerning his claims referenced in this action." Dkt. No. 30 at 15.

Before the Court is "a clash of sworn statements" where "[p]laintiff attested that he gave his grievance to [the Superintendent], and [defendants] submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson v. Kirkey, No. 20-CV-581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021). "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because the Court is prohibited from making credibility determinations." Id. (citing McLean v. LaClair, No. 19-CV-1227 (LEK/ATB), 2021 WL 671650, at *6 (N.D.N.Y. Feb. 22, 2021)); see Baltas v. Erfe, No. 3:19-CV-1820 (MPS), 2022 WL 4260672, at *10 (D. Conn. Sept. 15, 2022) (declining to render credibility determination for exhaustion issue on a motion for summary judgment); see also Carter v. Revine, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *11 (D. Conn. May 15, 2017) ("The Court cannot render summary judgment for the [d]efendants on the basis of

---

[8] As discussed supra, pursuant to DOCCS' grievance procedure, an inmate must first file a complaint with the IGRC. See supra Subsection II.B; see also 7 N.Y.C.R.R. § 701.5(a). However, "a more expedited procedure applies to [inmate] complaints involving harassment or assault by corrections officers or other staff on an incarcerated individual. In that circumstance, the complaint regarding staff misconduct would . . . go directly to the facility superintendent[.]" Hudson v. Kirkey, No. 9:20-CV-581 (LEK/DJS), 2023 WL 8360642, at *3 (N.D.N.Y. Sept. 11, 2023), report and recommendation adopted, 2023 WL 8270374 (N.D.N.Y. Nov. 29, 2023). Thus, accepting as true that plaintiff submitted a complaint to the Superintendent, he appears to have complied with the first step of the applicable grievance procedure.

their contention that [the plaintiff] did not file grievances when [the plaintiff] claims that he did. These conflicting factual scenarios create the classic genuine issue of material fact.").

However, given that the Court "must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," it is not clear that plaintiff's statement and defendants' sworn statements are in fact contradictory.  Torcivia v. Suffolk Cnty., New York, 17 F.4th 342, 355 (2d Cir. 2021); see Jenkins v. Officer S, No. 19-CV-10728 (KMK), 2023 WL 6259667, at *7 (S.D.N.Y. Sept. 26, 2023).  Indeed, "the Court must infer that [plaintiff's] grievance was never filed because prison authorities did not file it, not because [p]laintiff did not attempt to submit it."  Hudson, 2021 WL 1966721, at *4 (citations omitted); see McLean, 2021 WL 671650, at *8 ("[T]here is no necessary inconsistency between [the p]laintiff's claim that he mailed the appeals and [the d]efendants' claim that they were never filed; and the Court must grant [the p]laintiff the favorable inference that his grievance was sent and received, but not filed, for reasons out of his control.").

The Second Circuit has held that when a grievance goes unfiled and unanswered, "the process to appeal . . . is prohibitively opaque, such that no inmate could actually make use of it."  Williams v. Correction Officer Priatno, 829 F.3d 118, 126 (2d Cir. 2016).  In Williams, the plaintiff, responding to the defendants' claim that the plaintiff did not exhaust, contended that he attempted to file a grievance while he was in the SHU but that the correction officer he gave it to "never filed it for him."  Id. at 121.  The Court accepted the plaintiff's allegation,[9] and held that, "[u]nder that circumstance, the

---

[9] "The plaintiff supported [his] allegation [of unavailability] by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [ ] subsequent follow-up

regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." Id. at 124-25 (noting, in detail, the confusing nature of the timelines set forth in the DOCCS' regulations governing the grievance procedure). As such, the Second Circuit held that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'" Id. at 126 (quoting Ross, 578 U.S. at 643-44).

"Following Williams, this Court has denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU." Stephanski v. Allen, No. 9:18-CV-76 (BKS/CFH), 2020 WL 806331, at *8 (N.D.N.Y. Jan. 22, 2020) (citing Juarbe v. Carnegie, No. 9:15-CV-01485 (MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016)), report and recommendation adopted, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020). This Court has also denied summary judgment where a plaintiff "does not have a copy of the grievance, was not confined in the SHU, and has not submitted any contemporaneous correspondence inquiring about the status of his grievance," but submitted a sworn response and testified under oath "that he submitted a handwritten grievance" and that "he verbally followed up with the [ ] grievance office." Maldonado v. Mandalaywala, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17 (N.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020); cf. Khudan, 2016 WL 4735364, at *5 (granting summary judgment where, although the plaintiff asserted that he sent an appeal of his grievance to "Albany," he "fail[ed] to specify where in Albany he sent his

---

conversations occurred." Ozzborn v. Cornell, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4 (N.D.N.Y. June 2, 2021) (citing Williams, 829 F.3d at 121).

grievance and fail[ed] to provide any other details, including the approximate date he submitted his appeal").

Plaintiff contends that he submitted a grievance to the Superintendent; yet, defendants "cit[e] records that show [plaintiff] never filed [a grievance or] an appeal." Williams, 829 F.3d at 121; see Am. Compl. at 6.  Although plaintiff does not specify if he was in the SHU when he submitted his letter to the Superintendent, or if he "verbally followed up with the [ ] grievance office," Maldonado, 2020 WL 1159426, at *17, he provides other details relevant to his claim, including who he filed the grievance with, when the Superintendent acknowledged receipt, to whom it was referred, and when it was referred.[10]  See Dkt. No. 29 at 6 (stating that he submitted a handwritten grievance to Superintendent McIntosh, which "she herself acknowledge[d] receiving on 8-08-21 [and] referred the [matter] to DSS Bishop [on] 8-09-21"); cf. Heyliger v. Gebler, No. 06-CV-6220 (FPG), 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting the defendant's motion for summary judgment where the plaintiff alleged that his "original grievance was discarded by prison officials," yet the plaintiff "never described or named the individual who allegedly took this action"), aff'd, 624 F. App'x 780 (2d Cir. 2015) (summary order).  Moreover, plaintiff transferred facilities after attempting to file his grievance, which may contribute to the potential unavailability as "[t]he regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response." Williams, 829 F.3d at 126.

---

[10] As noted supra, defendants have not responded to plaintiff's allegation that Superintendent McIntosh acknowledged receiving his complaint.  See supra Subsection II.B.2.b.  Although defendants proffer declarations from Gregory, Cutler, and Seguin, defendants have not submitted a declaration from Superintendent D. McIntosh addressing plaintiff's claim.  See Dkt. Nos. 26-3, 26-4, 26-5.

"[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."  Scott v. Kastner-Smith, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) (citations and internal quotation marks omitted); see, e.g., Engles v. Jones, No. 6:13-CV-6461 (EAW), 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("[The p]laintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact.").  However, "those cases were either not decided in the context of a motion for summary judgment filed in lieu of an answer or involved allegations far more general than those at issue here."  Murray v. Noeth, No. 6:19-CV-6342 (EAW), 2022 WL 4467691, at *5 (W.D.N.Y. Sept. 26, 2022).  "[A]t this stage of the proceedings and with no discovery having been conducted, it would not be appropriate to resolve this issue just based on the papers."  Id.; see Thaxton v. Simmons, No. 10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [the p]laintiff never filed his initial grievance . . . as [the d]efendants claim, or that, as [the p]laintiff claims, he filed a timely grievance that was lost or tampered with by [the d]efendants. Such credibility assessments are to be resolved by a trier of fact.").

As such, it is recommended that the Court deny defendants' Motion for Summary Judgment and "hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable.  Hudson, 2021 WL 1966721, at *4; see also Tillman v. Phillips, No.

9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *9 (N.D.N.Y. Nov. 10, 2021), report and recommendation adopted, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021).

### III. Defendants' Partial Motion to Dismiss

Defendants move, in the alternative, for partial dismissal of plaintiff's Eighth Amendment failure to intervene claim.  See Dkt. No. 26-1 at 11.

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v.

Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal quotation marks and citation omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Where a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman, 470 F.3d at 477; see supra Subsection II.A.

### B. Plaintiff's Eighth Amendment Claim

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "Law enforcement officials[, including prison officials,] can be held liable under § 1983 for not intervening in a situation where another officer is violating an inmate's constitutional rights."  Tafari v. McCarthy, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010).  A defendant may be liable under a failure to intervene theory if: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  Id. (quoting Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

"Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable."  Sanabria v. Detective Shawn Tezlof, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016); see Vidal v. Correction Officer C. Lampon, No. 16-CV-5006 (JCM), 2019 WL 117304, at *3

(S.D.N.Y. Jan. 7, 2019) (citing <u>Buchy v. City of White Plains</u>, No. 14-CV-1806, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015)) (stating, in the context of excessive force claims, "[i]t is well established that [w]hen a law enforcement officer is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable") (internal quotation marks omitted); <u>see also</u> <u>Cuellar v. Love</u>, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014).  Here, plaintiff has sufficiently pleaded defendants' direct participation in the violation of his rights, and so "the failure to intervene theory of liability is inapplicable."  <u>Sanabria</u>, 2016 WL 4371750 at *5; <u>see also</u> <u>Buari v. City of New York</u>, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) ("'defendants cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing that violation'") (quoting <u>Marom v. City of New York</u>, No. 15-CV-2017 (PKC), 2016 WL 916424, at *19 (S.D.N.Y. Mar. 7, 2016)).

However, courts in this Circuit have allowed direct participation and failure to intervene claims to proceed in the alternative, with the caveat that the plaintiff later specify which defendants he seeks to hold liable for the direct constitutional violation versus which he seeks to hold liable for failure to intervene.  <u>See, e.g.</u>, <u>Buari</u>, 530 F. Supp. 3d at 393 (noting that, while the complaint was sufficient to withstand a motion to dismiss, "at the time of trial, after having had the benefit of discovery, [the plaintiff] will have to specifically identify which, if any, of the [d]efendants [ ] he seeks to hold liable under a failure to intervene theory"); <u>Lalonde v. City of Ogdensburg</u>, No. 8:22-CV-0164 (LEK/DJS), 2023 WL 2537626, at *10-11 (N.D.N.Y. Mar. 16, 2023) ("[T]he Court finds that [the p]laintiffs are permitted to plead in the alternative as to [the d]efendants with

regard to the failure-to-intervene claims, and are entitled to discovery to determine

which officers participated directly in the constitutional violations.").  The Southern

District of New York has allowed a failure to intervene claim, which was pleaded along

with an excessive force claim, "to proceed in the alternative beyond the summary

judgment stage" because "[a] reasonable jury could find [one defendant] did not use

excessive force against [the] plaintiff, but failed to prevent [another defendant] from

doing so."  Buchy, 2015 WL 8207492, at *3; see also Matthews v. City of New York, 889

F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because [the] plaintiffs properly allege at least

one constitutional violation, [the] plaintiffs are entitled to discovery to determine which

officers participated directly in the alleged constitutional violations and which officers

were present and failed to intervene.").

     Here, plaintiff alleges that some defendants used excessive force and some

defendants witnessed the excessive force and failed to intervene.[11]  See Dkt. No. 29 at

5, ¶7 (some defendants "st[ood,]" "watch[ed,]" and "didn't try to stop" the other

defendants from assaulting plaintiff).  Specifically, plaintiff appears to contend that, at

some point, some of the defendants ceased assaulting him and observed the other

defendants' assault but failed to intervene.  See id. at 4-5, ¶¶4-9.  At this stage of the

litigation, plaintiff's failure to intervene claims against defendants could be construed as

being pleaded in the alternative to the excessive force claims against those same

defendants.  At a later juncture, plaintiff will have to specify which defendants will be

---

[11] Plaintiff claims that there is video and audio evidence that can identify which defendants are liable under an excessive force theory, and which defendants are liable under a failure to intervene theory.  See Dkt. No. 29 at 4; see also Am. Compl. at 4-5.

subject to trial under each theory.  It is, therefore, recommended that defendants' partial motion to dismiss as to plaintiff's failure to intervene claims be denied.

## IV. Plaintiff's Cross-Motion for Summary Judgment

In response to defendants' motion, plaintiff cross-moves for summary judgment. See Dkt. No. 29.  Defendants oppose plaintiff's cross-motion, arguing (1) the motion is premature due to outstanding discovery; and (2) plaintiff failed to comply with the Local Rules.  See Dkt. No. 30 at 16-20.

"Where, as here, the parties have cross-moved for summary judgment, a reviewing court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Ward v. Stewart, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (quoting Marcano v. City of Schenectady, 38 F. Supp. 3d 238, 246 (N.D.N.Y. 2014)).  "In undertaking this analysis, it bears noting that 'a district court is not required to grant judgment as a matter of law for one side or the other.'" Id. at 327-28 (quoting Marcano, 38 F. Supp. 3d at 246); see also Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co., 884 F. Supp. 2d 3, 7 (E.D.N.Y. 2012) ("Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute.").  Moreover, "[t]he district court considering a summary judgment motion . . . must . . . be mindful of the underlying standards and burdens of proof[.]"  Juanes v. Lyzwinski, 875 F. Supp. 2d 155, 160 (N.D.N.Y. 2012) (citation and internal quotation marks omitted).  Thus, a plaintiff "bears a much greater initial burden; he must show that the evidence supporting

his claims is so compelling that no reasonable jury could return a verdict for the defendant."  Id.

## A. Outstanding Discovery

Summary judgment is a "drastic device" and "should not be granted when there are major factual contentions in dispute[,] . . . particularly . . . when, as here, one party has yet to exercise its opportunities for pretrial discovery."  Nat'l Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975) (citations omitted).  A district court should only grant summary judgment "'[i]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'"  Hellstrom v. U.S. Dep't of Veteran Affs., 201 F.3d 94, 97 (2d Cir. 2000) (quoting Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996)); see Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.") (citation and internal quotation marks omitted).  "Only in the rarest of cases may summary judgement be granted against a [party] who has not been afforded the opportunity to conduct discovery."  Hellstrom, 201 F.3d at 97; see also United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 139 n.21 (S.D.N.Y. 2015) (noting that "courts disfavor summary judgment motions made prior to the completion of discovery").

"It is undisputed that no discovery has been conducted in this action[.]"  Dkt. No. 30 at 17.  "Defendants have yet to file an Answer to [p]laintiff's Amended Complaint[,]" and "the Court has yet to issue a Mandatory Pre-Trial Discovery and Scheduling Order because no Answer has been filed."  Id.  Defendants argue that, "[w]ithout conducting

full discovery, [they] cannot assemble a full record and adequately refute [plaintiff's] allegation[s.]" Dkt. No. 30 at 17. In support of their contentions, defense counsel submits an affidavit[12] explaining that defendants "intend to use discovery to investigate [p]laintiff's allegations[, and to] seek information relevant to [their] affirmative defenses, including mootness." Dkt. No. 30-1 at 2, ¶8; see Dkt. No. 30 at 18-19; see also FED. R. CIV. P. 56(d) (requiring, in the context of summary judgment motions, the nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion).

Moreover, plaintiff has not presented any argument for "why this is one of the 'rarest of cases' where summary judgement may be granted against a [party] who has not been afforded the opportunity to conduct discovery." King v. Wenderlich, No. 14-CV-6491 (FPG), 2016 WL 4678998, at *2 (W.D.N.Y. Sept. 7, 2016) (quoting Hellstrom, 201 F.3d at 97). Thus, given that plaintiff filed his motion before the parties engaged in any discovery, the Court finds that plaintiff's motion for summary judgment is premature. See Crystalline H2O, Inc. v. Orminski, 105 F. Supp. 2d 3, 8 (N.D.N.Y. 2000) (collecting Second Circuit cases denying summary judgment motions as premature where there was not "a fully adequate opportunity for discovery at the time the moving party sought summary judgment" (internal citation omitted)). It is, therefore, recommended that plaintiff's cross-motion for summary judgment be denied as premature.

**B. N.D.N.Y. Local Rules**

---

[12] "A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" Lunts v. Rochester City Sch. Dist., 515 F. App'x 11, 13 (2d Cir. 2013) (summary order) (quoting Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995)).

N.D.N.Y. Local Rule 56.1 requires a party moving for summary judgment to submit a "Statement of Material Facts." N.D.N.Y. L.R. 56.1(a) (formerly N.D.N.Y. L.R. 7.1(a)(3)) ("Any motion for summary judgment <u>shall</u> contain a separate Statement of Material Facts." (emphasis added)). "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." <u>Id.</u> "Each fact listed shall set forth a specific citation to the record where the fact is established." <u>Id.</u> "<u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>" <u>Id.</u>

The Local Rules are not "empty formalities," and this Court has denied a pro se party's motion for summary judgment based on the party's failure to file a Statement of Material Facts. <u>Kilmer v. Flocar, Inc.</u>, 212 F.R.D. 66, 69 (N.D.N.Y. 2002); <u>see, e.g.</u>, <u>A'Gard v. Locke</u>, No. 9:14-CV-0613 (GTS/DEP), 2016 WL 8735653, at *4 (N.D.N.Y. June 24, 2016) (denying summary judgment motion because the pro se plaintiff did not comply with the applicable local rules governing motion practice by including a Statement of Material Facts) (citing <u>Riley v. Town of Bethlehem</u>, 5 F. Supp. 2d 92, 93 (N.D.N.Y. 1998) (dismissing summary judgment motion based on moving party's failure to file a properly supported Statement of Material Facts as required under the Local Rules)), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2016 WL 5137273 (N.D.N.Y. Sept. 21, 2016); <u>see also</u> <u>Cusamano v. Sobek</u>, 604 F. Supp. 2d 416, 426-27 & n.4 (N.D.N.Y. 2009) ("As has often been recognized by both the Supreme Court and Second Circuit, even pro se litigants must obey a district court's procedural rules.") (collecting cases).

Here, plaintiff filed a document entitled "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56.1," which appears to be a Notice of Motion. Dkt. No. 29 at 1. Plaintiff also attached a "Pro-Se Affirmation," which appears to be a memorandum of law. Dkt. No. 29 at 3-7. However, plaintiff did not include a separate Statement of Material Facts as required under Local Rule 56(1)(a). This failure to comply with the Local Rules constitutes an independent basis on which the Court could deny plaintiff's motion. See, e.g., Cross v. State Farm Ins. Co., 926 F. Supp. 2d 436, 451 (N.D.N.Y. 2013) ("The failure of a moving party to file a properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary judgment motion.") (citing Riley, 5 F. Supp. 2d at 93). Although plaintiff is a pro se litigant and the Court will "make reasonable allowances to protect [him] from inadvertent forfeiture of important rights because of [his] lack of legal training," his pro se status does not relieve him of the procedural requirements of the Local Rules. Caidor v. Onondaga Cnty., 517 F.3d 601, 605 (2d Cir. 2008) (citation omitted); see McZorn v. Endicott Police Dep't, No. 06-CV-33, 2008 WL 163581, at *2 (N.D.N.Y. Jan. 16, 2008). Although the undersigned is not recommending dismissal solely due to this failure, see discussion supra Subsection IV.A, plaintiff is advised that, going forward, his submissions must fully comply with the Federal Rules of Civil Procedure and the Local Rules.

## V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment and Motion to Dismiss in part (Dkt. No. 26) be **DENIED**; and it is further

**RECOMMENDED**, that the Court hold an exhaustion hearing to determine if administrative remedies were available to plaintiff; and it is further

**RECOMMENDED**, that plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 29) be **DENIED**; and it is

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order, defendants be given fourteen (14) days from the date of the District Judge's Decision & Order to answer plaintiff's complaint; and it is

**ORDERED**, that the Clerk of the Court amend the case caption to reflect Bryan Mason as the lead defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[13]

---

[13] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

Dated: December 27, 2023
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge