UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TYQUAN JOHNSON,

        **Plaintiff,**

vs.

                  9:22-CV-590
                  (MAD/CFH)

BRYAN MASON, et al.,

        **Defendants.**

---

**APPEARANCES:**               **OF COUNSEL:**

**TYQUAN JOHNSON**
17-B-1104
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK STATE**     **RACHEL OUIMET, AAG**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

   On June 6, 2022, *pro se* Plaintiff Tyquan Johnson, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action under 42 U.S.C. § 1983. *See* Dkt. Nos. 1, 4. Pursuant to a Decision and Order from this Court issued on July 12, 2022, Plaintiff's First Amendment free exercise claims and Eighth Amendment excessive force and failure-to-intervene claims survived. *See id.*

1

Currently before the Court is Defendants' motion for summary judgment predicated on the defense of failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") and partial motion to dismiss Plaintiff's Eighth Amendment claim for failure to state a claim. *See* Dkt. No. 26. Also before the Court is Plaintiff's response and cross-motion for summary judgment. *See* Dkt. No. 29. In a December 27, 2023 Report-Recommendation and Order, Magistrate Judge Hummel recommended that (1) Defendants' motion for summary judgment and motion to dismiss in part be denied; (2) the Court hold an exhaustion hearing to determine if administrative remedies were available to Plaintiff; and (3) Plaintiff's cross-motion for summary judgment be denied. *See* Dkt. No. 39 at 26, 30-31.

For the reasons set forth below, the Report-Recommendation and Order is adopted.

## II. BACKGROUND

Plaintiff's claims relate to an incident when he was housed in the special housing unit at Clinton Correctional Facility on August 7, 2021. *See* Dkt. No. 12 at ¶¶ 1, 9. Plaintiff requested medical attention but was unable to comply with orders from a nurse and corrections officers because his injured arm prevented him from placing his hands through a flap as directed. *See id.* at ¶¶ 2-4. Corrections officers told Plaintiff that he was refusing a direct order and approached his cell. *See id.* at ¶¶ 8-10. Plaintiff reiterated that he was injured and needed medical attention and laid down on the floor, where corrections officers sprayed him with extraction spray. *See id.* At ¶¶ 10-11. Plaintiff attempted to place his hands through the flap while reiterating his inability to move his left arm, and the corrections officers pulled his hands and cuffed his wrists. *See id.* at ¶ 13. The corrections officers then entered his cell, forced him to the floor, and punched, kicked, and "pull[ed] out [his] dreadlocks[.]" *Id.* at ¶ 14. The corrections officers "dragged" Plaintiff out of his cell by his feet and hands and brought him to a facility van where they "beat[ him] more"

and "pull[ed] out" his hair before transporting him to a facility hospital.  *Id.* at ¶¶ 15-16.

Plaintiff "was never written a misbehavior report for this incident[.]"  *Id.* at ¶ 19.  On August 27, 2021, he was transferred to Great Meadow Correctional Facility.  *See* Dkt. No. 26-5 at ¶ 12.

### III. DISCUSSION

**A.    Legal Standard**

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party makes specific objections to a magistrate judge's report, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  When a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan*, 289 F. Supp. 2d at 295 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has directed that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment."  *Id.* (citation omitted).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by

3

evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the Court may not rely solely on the moving party's Rule 56.1 statement; rather the Court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,'. . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

   A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the Court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

   To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability

5

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B.     Exhaustion of Administrative Remedies**

   *1. Parties' Objections*

Defendants contend that the Report-Recommendation erroneously interpreted the DOCCS Directive #4040 as permitting incarcerated individuals who allege harassment or assault to circumvent the three-step grievance procedure by sending a complaint to the facility's superintendent. *See* Dkt. No. 40 at 1-2. Defendants argue that Plaintiff's allegations should be dismissed because DOCCS Directive #4040 does not provide that directly contacting the Superintendent is an alternative to submitting a grievance and therefore Plaintiff failed to exhaust his administrative remedies. *See id.* at 1-2. Defendants contend that there is an expedited procedure for grievances alleging harassment and misconduct but "incarcerated individual must still initiate the grievance process by filing a grievance in accordance with § 701.5." *Id.* at 2.

Plaintiff objects that he properly exhausted his administrative remedies prior to bringing this claim[1]. *See* Dkt. No. 41 at 1.

The Court will review the Report-Recommendation's findings regarding the exhaustion of

---

[1] Plaintiff also submits an objection related to alleged video evidence. *See* Dkt. No. 41 at 1. However, this will not be addressed in this Order as it is a discovery request and not an objection to the Report-Recommendation and Order.

administrative remedies *de novo*.

### 2. DOCCS Grievance Procedure

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules." *Reid v. Marzano*, No. 9:15-CV-761, 2017 WL 1040420, *2 (N.D.N.Y. Mar. 17, 2017) (citing *Jones*, 549 U.S. at 218-19) (citations omitted). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Killian*, 680 F.3d at 238 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The DOCCS Inmate Grievance Program ("IGP") in New York State is a three-step process. *See* 7 N.Y.C.R.R. §§ 701.5(a)(1), (b). Within twenty-one days of an alleged incident, an incarcerated person must file a grievance with the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the complaint then issues a written determination. *See id.* An adverse decision may be appealed to the Superintendent of the Facility, *id.* at § 701.5(c), and an adverse decision by the Superintendent may be appealed to the Central Office Review Committee ("CORC"), which makes the final determination. *See id.* at § 701.5(d). "If all three of

these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983." *Reid*, 2017 WL 1040420, at *2 (citations omitted).

"There is an expedited procedure for grievances that allege 'employee harassment,' that is 'employee misconduct meant to annoy, intimate or harm an inmate.'" *Bradshaw v. Fletcher*, No. 9:19-CV-00428, 2021 WL 248236, *2 (N.D.N.Y. Jan. 26, 2021) (quoting 7 N.Y.C.R.R. §§ 701.8, 701.2(e)). "When the grievance clerk identifies a harassment grievance, the clerk must forward the grievance to the superintendent on the same day that the grievance was filed." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 119-20 (2d Cir. 2016) (quoting 7 N.Y.C.R.R. § 701.8(b)). Although "such grievances are forwarded directly to the prison superintendent, bypassing the IGRC review" they still must first be submitted as a grievance to the grievance clerk. *Bradshaw*, 2021 WL 248236, at *2 (citing 7 N.Y.C.R.R. § 701.8(b)(c)). The superintendent has twenty-five days from receipt of the grievance to render a decision, and that decision may be appealed within seven days of the receipt of the decision. 7 N.Y.C.R.R. §§ 701.8(f), (h) *see also Jackson v. Moore*, No. 9:21-CV-1001, 2023 WL 4710869, *3 (N.D.N.Y. Apr. 14, 2023) ("Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC") (citation omitted). Completing the administrative appeal process satisfies the exhaustion requirement. *See Bradshaw*, 2021 WL 248236, at *2.

The failure to exhaust available administrative remedies is an affirmative defense and the "defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). "[O]nce a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff

8

nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him, or her, the remedy was unavailable." *Coleman v. Nolan*, No. 15-CV-40, 2018 WL 4732778, *4 (N.D.N.Y. Oct. 2, 2018) (internal citations and quotations omitted).

### 3. The letter to the Director of Special Housing

Once Defendants introduced evidence that there was a functional grievance system, *see* Dkt. No. 26-1 at 8-10, Plaintiff needed to produce competent evidence supporting the unavailability of administrative remedies in order to overcome the presumption of availability. *See Hudson v. Kirkey*, No. 9:20-CV-00581, 2023 WL 2324988, *5 (N.D.N.Y. Mar. 2, 2023).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The Supreme Court held in *Ross* that an administrative remedy is "unavailable" when (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

"Alleged threats and violence are sufficient to excuse the failure to exhaust administrative remedies when they are 'such that a person of ordinary firmness would be deterred from using the facility's internal grievance process.'" *Decolines v. Hollenbeck, et. al.*, No. 9:20-CV-1502, 2021 WL 4947118, *4 (N.D.N.Y. Oct. 25, 2021) (quoting *Hepworth v. Suffolk Cty.*, No. 2:02-CV-6473, 2006 WL 2844408, *5-6 (E.D.N.Y. Sept. 29, 2006)). However, as the Report-Recommendation and Order correctly points out, a "'generalized fear of retaliation,'. . . is not sufficient to excuse the failure [of an incarcerated individual] to exhaust his administrative remedies." *Grant v. Kopp*, No. 17-CV-1224, 2019 WL 368378, *7 (N.D.N.Y. Jan. 3, 2019) (quoting *Bookman v. Lindstrand*,

9

No. 15-CV-1542, 2018 WL 3121688, *10-11 (N.D.N.Y. Feb. 14, 2018)).

As the Report-Recommendation and Order found, Plaintiff has not submitted evidence supporting the unavailability of administrative remedies. *See* Dkt. No. 39 at 9-12. In his amended complaint, Plaintiff claims that he attempted to submit a notice to the Director of Special Housing "prior to this incident[,] regarding threats from CO staff" and that he also "wrote to the commissioner of Albany" and "to Superintendent D. McIntosh[.]" Dkt. No. 12 at ¶ 18. Liberally construed, Plaintiff's allegations regarding his letter to the Director of Special Housing "regarding threats from C.O. staff" may allege that threats from corrections officers cowed him from filing a grievance. Dkt. No. 12 at ¶¶ 5-6. Such a claim is undermined by the fact that Plaintiff alleges he did write a complaint to the superintendent. *See Black v. Fischer*, No. 12-CV-2341, 2013 WL 1314940, *8-9 (S.D.N.Y. Mar. 28, 2013) (holding that the plaintiff's claim that he was deterred from pursuing grievances due to threats from a defendant was overcome by the fact that the plaintiff filed other grievances and complaints during the relevant time period).

Alternatively, Plaintiff's statement may be construed as alleging that he was deterred from filing another grievance after his prior complaint went unanswered. *See* Dkt. No. 12 at ¶¶ 5-6. However, a "plaintiffs' perception that the [the prison] grievance program was ineffective or that the filing of grievances was futile is insufficient to negate the PLRA's exhaustion requirement." *Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009). Therefore, Plaintiff has not shown that the administrative remedies were unavailable to him.

### 4. The letter to the superintendent

Here, Plaintiff asserts that "superintendent D. McIntosh addressed Plaintiff['s] grievance which was a hand written letter she herself acknowledges receiving on 8-08-21 who referred the letter to DSS Bishop 8-09-21[.]" Dkt. No. 29 at ¶ 11. It is unclear from Plaintiff's submissions if

10

he delivered his letter to the grievance clerk who then forwarded it to the superintendent, or if he circumvented the appropriate procedure by submitting the letter to the superintendent without first submitting it to the grievance clerk.

Defendants assert that "Plaintiff does not dispute that he did not file a grievance with the incarcerated grievance program office" and that Plaintiff alleges he submitted his letter "directly to the facility Superintendent[.]"  Dkt. No. 40 at 2 (citing Dkt. No. 29 at ¶¶ 10, 11).  Defendants contend that merely notifying the superintendent of a complaint is insufficient to satisfy the grievance process.

The Court agrees that DOCCS Directive 4040 and 7 N.Y.C.R.R. § 701.8 require Plaintiff to have filed his grievance with the clerk.  However, contrary to Defendants' construction of Plaintiff's assertion, Plaintiff does not use the word "directly" and it is unclear from Plaintiff's submissions if he submitted his letter to the superintendent via the grievance clerk.  Plaintiff is silent as to where he sent the letter.  Whether Plaintiff delivered his letter to the superintendent in accordance with the grievance procedure is a question of material fact.

If Plaintiff did submit his complaint via the grievance clerk, there is dispute about whether the grievance was nonetheless filed.  As the Report-Recommendation and Order found, the "statements from each side are not necessarily inconsistent.  Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it."  *Hudson*, 2021 WL 1966721, at *4 (citations omitted); *see also* Dkt. No. 39 at 18.  Therefore, if Plaintiff's letter to the superintendent was submitted in compliance with the grievance procedure, then his failure to appeal would be excused by the authorities' failure to file it, thus satisfying Plaintiff's exhaustion requirement.

Accordingly, the Court agrees with the Report-Recommendation and Order's finding that Defendants have failed to carry their burden of proof that no disputes of material fact exist regarding whether the grievance process was available to Plaintiff due to potential "machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions." *McLean*, 2021 WL 671650, at *9.

"In order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present." *Hudson*, 2021 WL 1966721, at 4; *see also Hudson v. Kirkey*, No. 9:20-CV-00581, 2023 WL 2324988, *5 (N.D.N.Y. Mar. 2, 2023) (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence). Holding an exhaustion hearing is the most appropriate action to determine whether Plaintiff properly exhausted administrative remedies.

**C.    Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff cross-moved for summary judgment, *see* Dkt. No. 29, and Defendants opposed Plaintiff's cross-motion. *See* Dkt. No. 30. The Report-Recommendation and Order determined that Plaintiff's motion was premature "given that [Plaintiff] filed his motion before the parties engaged in any discovery," and that Plaintiff's motion for summary judgment did not comply with requirements of the Local Rules. Dkt. No. 39 at 28, 30.

Defendants did not object to the recommendation, and Plaintiff's only objection is that "the Court deny any and all recommended request the Attorney General so ordered"; therefore, the Court will review the Report-Recommendation and Order for clear error. Dkt. No. 41 at 1.

*1. Outstanding Discovery*

"Since summary judgment is a 'drastic device,' it should not be granted when there are

major factual contentions in dispute. This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery." *Nat'l Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975) (citations omitted). "[S]ummary judgment should only be granted if after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 83 (2d Cir. 2018) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)) (quotation marks, citation, and internal editing omitted). "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson*, 477 U.S. 242, at 250 n.5).

As the Report-Recommendation and Order correctly concluded, neither party has conducted discovery in this action. *See* Dkt. No. 39 at 27. Because Plaintiff filed this motion prior to discovery and has failed to sufficiently explain why the Court should not defer the decision of the motion until Defendants have had the opportunity to take discovery, the Court finds no clear error in the Report-Recommendation and Order's conclusion; therefore Plaintiff's motion for summary judgment is denied as premature.

### 2. N.D.N.Y. Local Rules

Defendants argue that Plaintiff's cross-motion for summary judgment should be denied because Plaintiff failed to comply with Local Rule 56.1 which requires that a movant submit "a separate Statement of Material Facts." N.D.N.Y. L.R. 56.1(a). Although Plaintiff is *pro se*, "[t]he failure of a moving party to file a properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary judgment motion." *Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436, 451 (N.D.N.Y. 2013) (citing *Riley v. Town of Bethlehem*, 5 F. Supp. 2d 92, 93 (N.D.N.Y. 1998)).

13

Accordingly, the Report-Recommendation and Order correctly determined that Plaintiff's failure to include a separate Statement of Material Facts is an independent basis upon which the Court may deny Plaintiff's motion. *See* Dkt. No. 39 at 30.

Plaintiff is advised that, although his claim here is denied because it is premature, going forward his submissions must comply with the Local Rules.[2]

### D. Defendant's Partial Motion to Dismiss

Neither party objected to the recommendation that the Court deny Defendants' motion to dismiss Plaintiff's Eight Amendment claim for failure to intervene. *See* Dkt. No. 26-1 at 11; Dkt. No. 39 at 26; Dkt. No. 40; Dkt. No. 41.

"The Eighth Amendment prohibits the infliction of cruel and unusual punishments . . . including the unnecessary and wanton infliction of pain." *Giffen v. Crispen*, 193 F.3d 89, 91 (2d Cir. 1999) (citation and quotation marks omitted). "In addition, a corrections officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate in the use of force." *Animashaun v. Toohill*, No. 9:21-CV-00372, 2023 WL 6546069, *5 (N.D.N.Y. June 22, 2023) (citations omitted).

To establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y.

---

[2] Because Plaintiff's cross-motion for summary judgment is denied as premature, the Court will not consider Defendants' argument in the alternative that Plaintiff's motion be denied pursuant to Federal Rule of Civil Procedure 56(d). *See* Dkt. No. 30 at 12.

2010); *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Defendants assert that Plaintiff's failure to interfere claim must be dismissed because "Plaintiff alleges that each Defendant both participated in the assault and failed to intervene to stop the assault (while participating in it)" and such allegations are "insufficient to establish a valid cause of action for failure to intervene as matter of law." Dkt. No. 26-1 at 13 (citing *Molina v. New York*, No. 1:09-CV-00467, 2011 WL 6010907, *12 (N.D.N.Y. Dec. 1, 2011)). Defendants are correct that a defendant cannot be held liable for both excessive force and failure to intervene to stop that same force. *See Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578, 2016 WL 4371750, *5 (S.D.N.Y. Aug. 12, 2016) ("Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable"). However, as the Report-Recommendation and Order correctly noted, courts in the Second Circuit have held that "[w]here a plaintiff has properly alleged a constitutional violation, he is 'entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene.'" *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 725 (S.D.N.Y. 2015) (quoting *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012)); *see also* Dkt. No. 39 at 24. Accordingly, Plaintiff will be allowed to proceed with his excessive force claim and failure to intervene claim against Defendants. *See, e.g., Folk v. City of New York*, 243 F. Supp. 3d 363, 376 (E.D.N.Y. 2017) (denying the defendants' motion to dismiss the plaintiff's failure to intervene claim where "each of the Individual Defendants 'directly participated in or failed to intervene in the violation of [the plaintiff's] rights").

## IV. CONCLUSION

After carefully reviewing the parties' submissions, Magistrate Judge Hummel's Report-Recommendation and Order, the applicable law, and for the above-stated reasons, the Court

15

hereby

ORDERS that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 39) is **ADOPTED in its entirety**; and the Court further

ORDERS that Defendants' motion for summary judgment (Dkt. No. 26) is **DENIED without prejudice subject to renewal upon completion of the exhaustion hearing**; and the Court further

ORDERS that Defendants' motion to dismiss (Dkt. No. 26) is **DENIED**; and the Court further

ORDERS that Plaintiff's cross-motion for summary judgment (Dkt. No. 29) is **DENIED**; and the Court further

ORDERS that the Clerk of the Court serve a copy of this Memorandum Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 2, 2024
       Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge